IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**MY 24HOUR NEWS.COM, INC.,**

     **Plaintiff,**

v.

**AT&T CORP., VERIO, INC., NTT AMERICA, INC., and GENACOM, INC.,**

     **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:18-CV-1647-MHC**

## ORDER

This case comes before the Court on Defendants Verio, Inc. ("Verio") and NTT America, Inc. ("NTTA")'s Motion to Dismiss [Doc. 33]; Defendant Genacom, Inc. ("Genacom")'s Motion to Dismiss [Doc. 34]; Defendant AT&T Corp. ("AT&T")'s Motion to Dismiss Plaintiff's Complaint [Doc. 36]; Plaintiff's Unopposed Motion for Leave to File Under Seal [Doc. 55]; and Plaintiff's Request for Oral Argument on Defendants' Pre-Answer Motion to Dismiss [Doc. 60].

## I.     BACKGROUND

Plaintiff My24HourNews.com, Inc. ("My24") filed a Complaint on April 18, 2018, against AT&T, Verio, NTTA, and Genacom (collectively, "Defendants")

and Endurance International Group Holdings, Inc.  Compl. [Doc. 1].  On June 19, 2018, My24 voluntarily dismissed Endurance International Group Holdings, Inc. from the lawsuit without prejudice.  Joint Stipulation of Dismissal Without Prejudice [Doc. 30].  My24 alleges the following causes of action against Defendants:

- Count I: Fraudulent Inducement – Network Agreements (all Defendants)
- Count II: Fraudulent Inducement – Launch JV (AT&T)
- Count III: Breach of Joint Venture Agreement – Launch JV (AT&T)
- Count IV: Breach of Fiduciary Duty – Launch JV (AT&T)
- Count V: Promissory Estoppel – Launch JV (AT&T)
- Count VI: Fraudulent Inducement – Multimedia Expansion JV (AT&T)
- Count VII: Breach of Joint Venture Agreement – Multimedia Expansion JV (AT&T)
- Count VIII: Breach of Fiduciary Duty – Multimedia Expansion JV (AT&T)
- Count IX: Promissory Estoppel – Multimedia Expansion JV (AT&T)
- Count X: Violation of Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-4(a) (All Defendants)
- Count XI: Conspiracy to Violate Georgia RICO, O.C.G.A. § 16-14-4(c) (All Defendants)
- Count XII: Violation of Georgia Unfair and Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-372 (All Defendants)
- Count XIII: Breach of Contract – NDA (AT&T)
- Count XIV: Violation of the Defend Trade Secrets Act ("DTSA") – 18 U.S.C. § 1836(b) (AT&T)
- Count XV: Misappropriation of Trade Secrets Georgia Trade Secrets Act – O.C.G.A. § 10-1-706 *et seq.* (AT&T)
- Count XVI: Unjust Enrichment (AT&T)
- Count XVII: Conversion (AT&T)
- Count XVIII: Fraud (All Defendants)
- Count XIX: Negligent Misrepresentation (All Defendants)
- Count XX: Permanent Injunctive Relief (AT&T)

2

- Count XXI: Attorneys' Fees Pursuant to O.C.G.A. § 13-6-11 and Pre-Judgment Interest (All Defendants)
- Count XXII: Punitive Damages (All Defendants)

Compl.

## A.    Factual Background

My24 alleges that the causes of action arise as a result of a failed joint venture with AT&T. <u>See generally id.</u> My24 is "a digital technology company that produces live digital video news content made accessible, via My24's proprietary broadcast platform, on mobile devices (i.e., smartphones and tablets), and internet mediums." <u>Id.</u> ¶ 4. My24's innovation was to create "live digital video news content [that] is interactive and customizable" and could be pushed directly to a customer's smartphone "at a specified time without video buffering," known as the "Broadcast Platform." <u>Id.</u> To develop its Broadcast Platform, in late May and June 2011, My24 sought out entities that could help build the platform and invest in the idea. <u>Id.</u> ¶¶ 10, 20. My24 selected AT&T to develop its Broadcast Platform. <u>Id.</u> ¶ 24. My24 began what it believed were discussions with AT&T regarding investment and development of the Broadcast Platform but, unbeknownst to My24, it actually was dealing with "employees of third-party independent contractors with no authority to bind AT&T regarding professional services or investment." <u>Id.</u> ¶ 11. The third-party contractors included: Verio, a

3

global web hosting provider that has subsequently merged into NTTA, and Genacom, a website development and management company.  Id. ¶¶ 6-9, 33. My24 alleges that Defendants lured in unsuspecting customers with AT&T's brand in order to "upsell them expensive AT&T professional services, while misleading these customers into believing that AT&T would provide financial support for their businesses."  Id. ¶ 12.

On June 21, 2011, following discussions with John Tharp ("Tharp"), who My24 alleges misrepresented himself as an AT&T employee, Erik Underwood ("Underwood"), Chief Executive Officer of My24, confirmed that My24 had selected AT&T to buildout its Broadcast Platform on the condition that the Broadcast Platform and all intellectual property associated with it would belong to My24 and that AT&T would provide the Broadcast Platform exclusively to My24. Id. ¶ 24.  Over the intervening months, My24 continued to work with employees to design and develop the broadcast platform.  Id. ¶¶ 25-27.  Underwood "reasonably believed that he was discussing a joint venture deal with AT&T."  Id. ¶ 27.  Todd Olson ("Olson") a Verio employee that My24 alleges misrepresented himself as an AT&T executive project manager, "assured Mr. Underwood that My24 would retain all such intellectual property and that AT&T would exclusively provide the Broadcast Platform to My24."  Id. ¶¶ 26, 28.  On a conference call on April 20,

4

2012, Olson advised Underwood that AT&T had assigned Barbara Pepe ("Pepe") to serve as the official account liaison between AT&T and My24 and would coordinate the joint venture discussions. Id. ¶ 39. After the conference call, Underwood and Pepe communicated daily regarding the Broadcast Platform and potential joint venture. Id. ¶ 41. Pepe advised Underwood that AT&T was interested in obtaining a percentage ownership interest in My24. Id.

The parties agreed to a two-day "partnership/investment meeting" held in Atlanta, Georgia on May 31 and June 1, 2012. Id. ¶ 42. In anticipation of the meeting, My24 and AT&T executed a Mutual Non-Disclosure Agreement ("NDA") on May 11, 2012. Id. ¶ 45; see NDA [Doc. 36-5]. After the parties signed the NDA, Underwood provided Pepe with My24's Executive Summary and Market Strategic Analysis, the content of which would later form the Business Plan. Compl. ¶ 46. On the first day of the meeting, Underwood explained that under the proposed joint venture:

- AT&T Mobility would preload the My24 App on every AT&T smartphone and exclusively deliver My24's live digital video news content to smartphones, tablets, other internet devices, and over an AT&T U-Verse channel.

- AT&T would provide product sponsorship and placement, would cross-market AT&T, and would co-brand its name with My24.

- AT&T would invest $25 million for My24's launch, $2.2 million for headquarters' expenses, and $75 million for brand development for My24's other digital media brands, for a total investment of $102.2 million.

Id. ¶¶ 53-54.  AT&T explained at the meeting that it could "provide My24 with a channel on U-Verse[,] [and] AT&T would be the exclusive provider of My24, would receive 20% of My24, and would co-brand AT&T with My24."  Id. ¶ 55.

Before the second day of meeting commenced, Blair Bardwell ("Bardwell"), who took a leading role in the meeting on behalf of AT&T and Pepe, met with Underwood in private and informed him that "AT&T accepted My24's joint venture proposal regarding the launch of My24 . . . on the condition that My24 agree to launch My24 at a presidential town hall meeting or a debate . . . between then President Barack Obama and Republican Candidate Mitt Romney during the then upcoming 2012 U.S. Presidential election."  Id. ¶ 58.  Bardwell promised that AT&T would sponsor My24's launch during the presidential town hall, cross-market and cross-brand the two companies, provide the Broadcast Platform to My24, and provide $75 million in exchange for granting AT&T a 20% interest, agree to cross-marketing and cross branding rights, and agree to launch My24 during a presidential town hall meeting.  Id. ¶¶ 59-61.  Underwood, on behalf of My24, agreed to the terms.  Id. ¶ 62.  According to the Complaint, at the private

6

meeting between Underwood, Pepe, and Bardwell, the parties orally formed two joint ventures: (1) the "Launch JV" and (2) the "Multimedia Expansion JV." Id. ¶¶ 58, 61, 63.

Underwood, Pepe, and Bardwell then entered the meeting room with the other meeting participants and announced that the parties had agreed to the Launch JV and the Multimedia Expansion JV. Id. ¶ 64. However, Underwood and the other My24 participants were unaware that the AT&T representatives were informed prior to the meeting "that there was no way AT&T would provide the funding requested by My24." Id. ¶ 66.

My24 and AT&T began to plan the presidential town hall meeting, and AT&T provided My24 a "Sponsorship Letter" that it could use to communicate with the presidential candidates' campaigns. Id. ¶¶ 67-86. On August 23, 2012, My24 executed the following agreements with AT&T: Wholesale Master Service Agreement, Network Integration Services and Equipment Resale Pricing Schedule, Content Delivery Network Pricing Schedule, and Synaptic Hosting Service Pricing Schedule (collectively the "Network Agreements"). Id. ¶¶ 87-88; Network Agreements [Doc. 37-1].

My24 and AT&T continued to prepare for the presidential town hall and My24's launch. Compl. ¶ 91. On October 10 and 11, 2012, My24 and AT&T

participated in another meeting in Atlanta, Georgia to solidify arrangements. Id. ¶ 93. At the meeting, Pepe assured Underwood that AT&T would fund the presidential town hall and provide everything necessary to launch My24. Id. However, the parties later decided to launch My24 during a presidential interview. Id. ¶ 98.

In October 2012, My24's Atlanta studio experienced foundation problems and water damage. Pepe and Olsen referred Underwood to a broadcast studio owner in Denver, Colorado, and Underwood agreed to temporarily[1] relocate My24 to Denver. Id. ¶¶ 94, 97.

My24 alleges that, AT&T never actually sponsored the presidential town hall meeting or interview or funded the Launch JV or Multimedia Expansion JV. Id. ¶ 99. My24 also alleges that, in conjunction with AT&T's acquisition of DirecTV and proposed merger with Time Warner, "it disclosed and/or utilized trade secrets relating to My24's Business Plan and intellectual property associated with the Broadcast Platform." Id. ¶¶ 100-01.

---

[1] My24 states in its Complaint that it is currently a Colorado corporation. Compl. ¶ 4.

## B.     Procedural Background

On June 9, 2015, My24 initiated an action against AT&T in the U.S. District Court for the District of Colorado ("the Colorado Action").  Pl.'s Am. Br. in Opp'n to Def. AT&T's Mot. to Dismiss ("Pl.'s Br. in Opp'n to AT&T") [Doc. 56] at 7. After jurisdictional discovery, the Colorado court dismissed the action without prejudice on jurisdictional grounds on July 21, 2016.  Id. at 7-8 n.2.  My24 filed a motion requesting the court alter or amend its previous dismissal and transfer the case instead.  Id. at 8.  The Court denied the transfer motion on March 2, 2017.  Id.

On August 29, 2017, My24 initiated a new action against AT&T in the Southern District of New York (the "New York Action").  Id.  It never served the complaint.  Id.  Instead, on January 18, 2018, My24 filed an amended complaint, adding as defendants Verio, NTTA, and Genacom.  Id.  It served the defendants, but then voluntarily dismissed its amended complaint, prior to defendants filing an answer or responsive pleading.  Id. at 9.  My24 filed the current action on April 18, 2018.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pled facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only must the court accept the well-pled allegations as true, but these allegations must also be construed in the light most favorable to the pleader.  Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual

allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss

requires the court to assume the veracity of well-pleaded factual allegations and

"determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.  DISCUSSION

Defendants make a variety of arguments as to why My24's Complaint must

be dismissed. Defendants contend that all of My24's claims are barred as

untimely. Def. AT&T's Mem. of Law in Supp. of its Mot. to Dismiss Pl.'s Compl.

("AT&T Mot. to Dismiss") [Doc. 36-1].[2] Defendants contend further that, if any

of the claims are timely, the Court lacks personal jurisdiction over them. Id. at 19-

20. The Court will consider the timeliness of each cause of action asserted by

My24. For purposes of diversity actions, state law determines when the action

commences for statute of limitations purposes. Strickland v. Arch Ins. Co., 718 F.

---

[2] The Court has also reviewed the briefs, responses, and replies relating to Verio,
NTTA, and Genacom's Motions to Dismiss. See generally Defs. Verio and
NTTA's Mem. of Law in Supp. of Mot. to Dismiss [Doc. 33-1]; Pl.'s Mem. of Law
in Opp'n to the Mot. to Dismiss of Defs. Verio and NTTA ("Pl.'s Opp'n Br. to
Verio and NTTA") [Doc. 52]; Defs. Verio and NTTA's Reply Br. in Supp. of Mot.
to Dismiss [Doc. 57]; Def. Genacom's Mem. of Law in Supp. of Mot. to Dismiss
[Doc. 34-1]; Pl.'s Mem. of Law in Opp'n to Def. Genacom's Mot. to Dismiss
[Doc. 51]; Def. Genacom's Reply Br. in Supp. of Mot. to Dismiss [Doc. 58]. The
Court generally will refer to AT&T's briefs as the arguments found therein support
dismissal as to all Defendants for most causes of action. It will refer to briefs of
the other Defendants as necessary.

App'x 927, 929 (11th Cir. 2018) (citing Cambridge Mut. Fire Ins. Co. v. City of

Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983)).

## A.    Equitable Tolling

My24 relies upon the doctrine of equitable tolling to contend that several of

its causes of action are not barred by the statute of limitations.  Pl.'s Br. in Opp'n

to AT&T at 11-18.

### 1.    Counts Asserted Against AT&T in Colorado Action: II-IX, XV-XIX

AT&T contends that the counts asserted in the Colorado Action against it

are time barred.[3]  AT&T Mot. to Dismiss at 10-14.  In the Colorado Action, My24

asserted that its oral joint ventures, fraud, breach of fiduciary duty, trade secrets,

unjust enrichment, and conversion claims began to accrue at or about December 7,

2012, when AT&T invoiced My24 for work on the Broadcast Platform, the costs

of which AT&T was supposed to bear under the Launch JV and Multimedia

Expansion JV.  Mot. to Alter or Amend J. by Transferring Case,

My24HourNews.com, Inc. v. AT&T Corp., 15-CV-01210-RM-NYW (D. Co. Aug.

---

[3] My24 contends that many of its other claims are based on information uncovered
in 2015 during jurisdictional discovery in the Colorado action.  Because counts II-
IX, XV-XIX were brought in the Colorado action (prior to jurisdictional
discovery), the 2015 uncovered documents cannot form a basis for these causes of
action.

18, 2016), ECF No. 120 [Doc. 36-8] at 12.  My24 argued to the Colorado court that the statute of limitations on these claims was four years, meaning the statute of limitations would expire on December 7, 2016.  Id. at 11-12.

Notwithstanding its representations to the Colorado court, My24 now contends that its claims were tolled "prior to" it filing the Colorado Action on June 9, 2015.  Pl.'s Br. in Opp'n to AT&T at 11.  "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."  O.C.G.A. § 9-3-96.  Notably, My24 does not state what date its claims were tolled or what action triggered the tolling.  It states that "AT&T urges the Court to speculate as to when My24 became aware of the fraud detailed in the Colorado Complaint, but that analysis is fact intensive and should be done with the benefit of record to place certain facts in context."  Pl.'s Br. in Opp'n to AT&T at 11-12.

My24 cannot simply state that tolling has occurred and argue it is entitled to establish it post-discovery; at the motion to dismiss stage, it is the plaintiff's burden to plead facts that establish that the statute of limitations has been tolled.  Harrison v. McAfee, 338 Ga. App. 393, 395 (2016), reconsideration denied (July 28, 2016), cert. denied (Apr. 17, 2017); Allmond v. Young, 314 Ga. App. 230,

230-31 (2012).  To plead fraudulent concealment, a plaintiff must allege "(1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." Daniel v. Amicalola Elec. Membership Corp., 289 Ga. 437, 445 (2011) (citation omitted).

Setting aside the import of My24's factual assertions to the Colorado court as to when its claims arose, My24's instant Complaint does not properly plead fraudulent concealment sufficient to toll the statute of limitations.  My24 states that "[t]he Complaint in the instant matter lays out in detail the measures employed by AT&T to conceal its fraudulent behavior regarding the joint venture agreements and when My24 knew or should have known that it was a victim of fraud is a question of fact."  Pl.'s Br. in Opp'n to AT&T at 12 (citing Compl. ¶¶ 49-66).  But a review of the paragraphs cited does not reveal any post-2012 efforts by Defendants to conceal their fraud or when My24 knew or should have known it was a victim of fraud.  My 24 further argues that "AT&T attempts to conflate the very distinct issues of when My24 should have known of a purported *breach* of the joint venture agreements and when My24 knew or should have known that it was a *fraud victim*."  Id.  My24 avers that Defendants continued to cover up the fraud by assuring My24 that funding would be forthcoming.  Id. at 12-13.  But the latest

14

date that My24 notes this occurred was November 2012.  Id. at 13.  My24 fails to

plead in any manner how Defendants continued to conceal the fraud from My24

post-2012, or how My24 exercised reasonable diligence.  With the narrow

exception of paragraphs 100 and 101, which deal with the alleged disclosure of

My24's trade secrets during 2015 and 2016, the Complaint contains no factual

allegations that take place after 2012.

Further, receipt of the Network Agreements[4] should have placed My24 on

notice of its fraud-based claim.  The Network Agreements make clear that that

AT&T was not entering a joint venture with My24 (Network Agreements at 7 ¶ 18

("The relationship between the parties shall be that of independent contractors and

---

[4] Neither party disputes the authenticity of the Network Agreements and NDA, which AT&T submitted in conjunction with its Motion to Dismiss.  As a general rule, courts in the Eleventh Circuit do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. Fuller v. SunTrust Banks, Inc., 744 F.3d 685, 695-96 (11th Cir. 2014).  "There is an exception, however, to this general rule.  In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  SFM Holdings, Ltd. v. Banc of America Securities, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)); see also Harris v. Ivex Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").  The Court finds that the Network Agreements and NDA are central to My24's claim and therefore considers the documents in this opinion.

not . . . joint venturers.")); that AT&T did not guarantee or even imply a

sponsorship (Id. at 27 ¶ 8(c) ("The work and services provided under this

agreement do not guarantee or imply any partnerships or sponsorships by AT&T to

My2HourNews.com [sic].")); and that Verio was actually providing the services,

not AT&T (Id. at 27 ¶ 10 ("AT&T and Verio Inc., the third party provider of the

services under this SOW . . . ."))[5]

My24 argues later in its brief that AT&T "improperly implies that a

Complaint must detail facts that demonstrate when My24 knew, or should have

known, of its cause of action. To the contrary, My24 need only plead facts

showing why it has been debarred and deterred, which it has done." Pl.'s Br. in

Opp'n to AT&T at 15 (citing Shipman v. Horizon Corp., 245 Ga. 808, 808-09

---

[5] My24 argues at length that the Network Agreements do not defeat My24's reasonable reliance on AT&T's misrepresentations. Pl.'s Br. in Opp'n to AT&T at 21-27. My24 essentially argues that the joint ventures were agreements separate from the Network Agreements, and the merger clause in the Network Agreements cannot under New York law absolve AT&T of the misrepresentations made to get My24 to enter the Network Agreements. But My24 is arguing the merits of its breach of contract action rather than addressing the threshold issue of whether its "reliance" was sufficient to toll the statute of limitations. Regardless of whether the parties had planned to enter other agreements or whether the Network Agreements absolved Defendants of any fraudulent misrepresentations made to get My24 to enter the agreement, the specific language of the Network Agreements would have raised a concern to any reasonable person as to whether AT&T would be providing them services.

(1980)).  However, as <u>Shipman</u> makes clear, tolling can only occur where there is an "exercise reasonable diligence." <u>Shipman</u>, 245 Ga. at 808.  While facts establishing debarment and determent are important, a plaintiff must also establish reasonable diligence, which at minimum would include pleading facts that establish when it knew or should have known the fraud was occurring.

Accordingly, the Court finds that My24 has not properly pleaded that its claims for counts II-IX, XV-XIX were tolled prior to the filing of its Colorado action, and those counts are **DISMISSED** as untimely.

### 2.    Newly Asserted Fraud-Based Claims: Counts I, X, XI, XII, XVIII and XIX

Counts I, X, XI, XII, XVIII and XIX also depend upon equitable tolling. Count I alleges fraudulent inducement against all Defendants and is subject to a four-year limitations period.  Compl. ¶¶ 102-12; <u>Hamburger v. PFM Capital Mgmt., Inc.</u>, 286 Ga. App. 382, 387 (2007).  Counts X and XI allege a violation, and a conspiracy to violate, Georgia RICO against all Defendants.  Compl. ¶¶ 170-224.  Georgia RICO claims are subject to a five-year limitation period.  O.C.G.A. § 16-14-8.  Count XII is a claim under Georgia UDTPA, O.C.G.A. § 10-1-372, against all Defendants.  Compl. ¶¶ 225-37.  The statute of limitations on a UDTPA claim is four years. <u>Kason Indus., Inc. v. Component Hardware Grp., Inc.</u>, 120 F.3d 1199, 1205 (11th Cir. 1997).  Counts XVIII and XIX allege fraud and

negligent misrepresentation against Verio, NTTA, and Genacom, and are subject to a four-year limitations period.  Compl. ¶¶ 289-99; O.C.G.A. § 9-3-31.  All of these causes of action are untimely if the statute of limitations is not tolled.

These causes of action are premised on the fact that Verio, NTTA, and Genacom misrepresented themselves as AT&T employees, misrepresented AT&T's interests in forming a joint venture, investing, and providing services to My24 to induce My24 to enter a contract with AT&T.  My24, via Underwood's testimony, avers that it only discovered these causes of action through jurisdictional discovery in the Colorado Action in late 2015, wherein Underwood discovered "the true corporate affiliations of the individuals who I believed were AT&T, and with whom I had agreed to build the Broadcast Platform and enter into joint ventures for the launch and expansion of that Platform."  Decl. of Eric Underwood [Doc. 54 at 31] ¶ 4.  My24 states that "[u]ntil jurisdictional discovery took place in late-2015, [it] had no reason to suspect that Verio was guilty of fraud—that it had masqueraded as AT&T and, conspiring with AT&T sales people who lacked the necessary authority, participated in misrepresenting AT&T's willingness to invest more than $100 million in [it]'s business."  Pl.'s Opp'n Br. to Verio and NTTA at 23; see also Compl. ¶¶ 289-99; Pl.'s Br. in Opp'n to AT&T at 18 ("The conduct that served as the gravamen of My24's RICO claims against

18

Defendants was only discovered in November of 2015, during jurisdictional discovery in the Colorado case.").

My24 must meet the pleading elements of fraudulent concealment in order to state a claim for tolling: "(1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." Daniel, 289 Ga. at 445 (citation omitted).

The Court again finds that My24 has not pleaded that its diligence in uncovering the fraud was reasonable.  For example, My24 knew when it filed its Colorado complaint that at least one individual who claimed to be an AT&T representative was actually an employee of Verio.  "Unbeknownst to My24 at the time, Mr. Olson was actually employed by Verio, Inc., a software company to whom AT&T outsourced much of its software design work.  Mr. Olson's web address is tolson@at&t-webhosting.com.  Mr. Olson acted on behalf of AT&T as its agent."  Compl., My24HourNews.com, Inc. v. AT&T Corp., 15-CV-01210-RM-NYW (D. Co. June 9, 2015), ECF No. 1 ("Co. Compl.") [Doc. 36-10] ¶ 17. The Colorado Complaint does not reference NTTA or Genacom, but the discovery that Olsen was not actually an AT&T employee should have caused My24 to investigate the other individuals it believed to be from AT&T.  It is simply

unreasonable that, knowing about Olsen's misrepresentations, My24 would not question and investigate the affiliations of the other individuals with whom it dealt.

Further, as noted above, the Network Agreements explicitly state that Verio, not AT&T, would be providing services.  Network Agreements at 27 ¶ 10.  My24 tacitly admits this is the case, but argues that "Defendants do not and cannot argue that Plaintiff knew before 2015 that Verio had participated in fraudulently mispresenting AT&T's willingness to invest."  Pl.'s Opp'n Br. to Verio and NTTA at 24.  Whether or not this is the case, the Court finds that glaring red flags in the Network Agreements should have alerted My24 to investigate in a timely manner whether Verio had misrepresented AT&T's willingness to invest.

Accordingly, the Court finds that My24 has not shown reasonable diligence sufficient to toll the statute of limitations on Counts I, X, XI, XII, XVIII and XIX. Because My24 was put on notice of these claims at least on August 23, 2012 (the date the Network Agreements were signed), the Court finds that the claims must have been filed by August 23, 2016.  Counts I, X, XI, XII, XVIII and XIX are **DISMISSED** as untimely.

### B.   Count XIII

Count XIII is a breach of contract claim against AT&T for violation of the NDA.  Compl. ¶¶ 238-43.

### 1.      Does the NDA merge into the Network Agreements?

AT&T contends that My24's claim for breach of the NDA should be dismissed because the NDA was superseded by the Wholesale Master Service Agreement (part of the Network Agreements discussed above), which contains a two-year statute of limitation. AT&T Mot. to Dismiss at 14-16. My24 states that the NDA and Network Agreements were being negotiated at the same time and were meant to be signed concurrently, so that one contract should not take precedence over another. Pl.'s Br. in Opp'n to AT&T at 19.

The Wholesale Master Service Agreement, part of the Network Agreements, was signed by Underwood on August 23, 2012. It states:

> **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with respect to the Services. This Agreement supersedes all prior agreements, proposals, representations, statements or understandings, whether written or oral, concerning the Services or the parties' rights or obligations relating to the Services. Any prior representations, promises, inducements or statements of intent regarding the Services that are not embodied in this Agreement are of no effect.

Network Agreements at 8 ¶ 35. "Services" is defined as "the AT&T services described in the Attachment(s) to this Agreement." The Statement of Work details the services AT&T agreed to provide to My24, including the buildout of its Platform. Id. at 17-26. On May 11, 2012, several months earlier, the parties entered the NDA, which states that "the parties desire to enter into negotiations and

21

other communications regarding the possible provision of products and/or services by AT&T to Company." NDA at 1.  Thus, the NDA and the Network Agreements cover the same subject matter, but the Network Agreements were later in time.

The NDA and the Master Services Agreement are governed by New York Law.  NDA ¶ 17; Network Agreements at 5 ¶ 33.  Under New York law, where the parties subsequently enter upon a valid and inconsistent agreement containing a merger clause and covering the same subject-matter, the first contract is superseded and discharged by the second.  Pate v. BNY Mellon-Alcentra Mezzanine III, LP, 81 N.Y.S. 3d 29, 30 (N.Y. App. Div. 2018).  When the NDA and the Master Services Agreement were negotiated is irrelevant where the later agreement contains a merger clause explicitly disclaiming the prior agreement. Accordingly, the Master Services Agreement governs.  Under the Master Services Agreement, "any legal action arising under this Agreement, must be initiated within two years after the cause of action arises."  Network Agreements at 8 ¶ 23.

### 2. Does My24 State a Timely Claim for Breach of the Master Services Agreement?

My24 alleges that AT&T breached the NDA (which the Court finds was subsumed by the Master Services Agreement) by disclosing My24's Business Plan in conjunction with AT&T's acquisition of DirecTV and proposed merger with Time Warner.  Compl. ¶ 241.  The Master Services Agreement also contains strict

22

"Confidentiality Obligations" that would likely be violated by disclosure of My24's Business Plan to DirecTV or Time Warner, as alleged.  See Network Agreements at 7 ¶¶ 19-20.

My24 does not allege specifically when the disclosures occurred.  AT&T acquired DirecTV on July 24, 2015, and My24 alleges that the disclosure was done in conjunction with the acquisition.  Compl. ¶ 101.  Accordingly, the Court finds that My24's cause of action accrued no later than the date on which the acquisition of DirecTV was consummated.  My24's claims related to the DirecTV acquisition expired on July 24, 2017 (prior to the date of the first New York Action, on August 29, 2017).

With respect to the Time Warner merger, My24 alleges that AT&T disclosed its trade secrets in conjunction with the proposed merger with Time Warner, which was announced on October 22, 2016.  Id.  My24 fails to state exactly the date the disclosure occurred.  Plaintiff has failed to fulfill its burden to establish that these claims are timely.

### 3.   Does the Court have personal jurisdiction over AT&T for Count XIII?

Even assuming that My24 had alleged sufficient factual information to establish a timely claim, My24 fails to allege personal jurisdiction over AT&T in Georgia for this action.  "A plaintiff seeking the exercise of personal jurisdiction

23

over a nonresident defendant bears the initial burden of alleging in the complaint

sufficient facts to make out a prima facie case of jurisdiction." <u>Diamond Crystal</u>

<u>Brands, Inc. v. Food Movers Int'l, Inc.</u>, 593 F.3d 1249, 1257 (11th Cir. 2010)

(citation omitted); <u>see also</u> <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1214

(11th Cir. 1999). "A federal court sitting in diversity undertakes a two-step inquiry

in determining whether personal jurisdiction exists: the exercise of jurisdiction

must (1) be appropriate under the state long-arm statute and (2) not violate the Due

Process Clause of the Fourteenth Amendment to the United States Constitution."

<u>Diamond Crystal</u>, 593 F.3d at 1257-58 (citation omitted). District courts in

Georgia cannot conflate these two inquires because Georgia's long-arm statute

does not provide personal jurisdiction that is coextensive with due process. <u>Id.</u> at

1259. Instead, the long-arm statute "imposes independent obligations that a

plaintiff must establish for the exercise of personal jurisdiction that are distinct

from the demands of procedural due process." <u>Id.</u> (footnote omitted).

The plaintiff bears the initial burden of alleging sufficient facts to make a

prima facie case for personal jurisdiction over a nonresident. <u>Id.</u> at 1257. If the

defendant challenges jurisdiction and supports the challenge with affidavit

evidence, the burden shifts back to the plaintiff to produce evidence supporting

jurisdiction. <u>Id.</u> "Where the plaintiff's complaint and supporting evidence conflict

24

with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id. (citation omitted). "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence." Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).

My24 contends that the Court has personal jurisdiction over AT&T because "My24 was headquartered in Georgia when the events alleged in the Complaint took place[.]" Pl.'s Br. in Opp'n to AT&T at 20. But the Complaint alleges that My24 is currently a Colorado corporation, and became one in 2012. Compl. ¶¶ 4, 97. My24 fails to provide any other factual basis for personal jurisdiction for events occurring in 2016. Accordingly, the Court lacks personal jurisdiction over AT&T for this cause of action.[6]

## G.    Count XIV

My24's Count XIV is a claim under the DTSA, 18 U.S.C. § 1836(b), alleging that AT&T misappropriated My24's trade secrets in conjunction with its

---

[6] My24 requests that the Court "permit amendment and jurisdictional discovery to supplement the record as needed." Pl.'s Br. in Opp'n to AT&T at 20. However, My24 already was permitted jurisdictional discovery in the Colorado Action, and fails to allege that AT&T's actions with respect to Time Warner have any connection to Georgia. Accordingly, My24 fails to adequately support its request for jurisdictional discovery.

October 22, 2016 merger with Time Warner.  Compl. ¶¶ 244-60.  AT&T argues

that this claim also is untimely because the DTSA was enacted on May 11, 2016,

does not apply retrospectively, and the only facts alleged in the Complaint relate to

conduct that pre-dates the enactment of the statute.  AT&T Mot. to Dismiss at 38

n.16.  Because the Complaint only alleges post-enactment misuse on "information

and belief," the DTSA claims are not appropriately pleaded.  Id. (citing Cave

Consulting Grp., Inc. v. Truven Health Analytics Inc., No. 15-CV-02177-SI, 2017

WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) ("This allegation is insufficient to

state a claim, as plaintiff makes no specific allegations that defendant used the

alleged trade secrets after the DTSA's May 11, 2016 enactment.")).  My24 does

not respond to this argument, and only mentions DTSA once in its brief.  See Pl.'s

Br. in Opp'n to AT&T at 14; see also Kramer v. Gwinnett Cty., 306 F. Supp. 2d

1219, 1221 (N.D. Ga. 2004) ("a party's failure to respond to any portion or claim

in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B,

NDGa ("Failure to file a response shall indicate that there is no opposition to the

motion.").  Accordingly, the Court finds Count XIV is not timely pled under the

DTSA and is **DISMISSED**.

## H.    Counts XX-XXII

Counts XX, XXI, and XXII for permanent injunctive relief, attorneys' fees, and punitive damages are remedies and entirely dependent on the other causes of action asserted in the Complaint.  As the Court finds that all the other counts are due to be dismissed, counts XX-XXII are **DISMISSED** as well.[7]

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants Verio, Inc. and NTT America, Inc.'s Motion to Dismiss [Doc. 33], Defendant Genacom, Inc.'s Motion to Dismiss [Doc. 34], and Defendant AT&T Corp.'s Motion to Dismiss Plaintiff's Complaint [Doc. 36] are **GRANTED**.

---

[7] My24 additionally filed a Motion for Oral Argument and a Motion for Leave to File Under Seal.  My24 contends that oral argument will be helpful to the Court and essential in the interests of justice because Defendants contend that a "key statement in Plaintiff's declaration is false."  Mot. for Oral Arg. [Doc. 60] at 1. My24 further argues that the issues of the statute of limitations and merger clause are complicated and would be aided by oral argument.  After reviewing the submissions of the parties, the Court does not agree that the issues are complicated or that oral argument is necessary, and the motion is **DENIED**.  In reaching the present decision, the Court has not relied on Defendant's argument that Plaintiff's declaration is false.

Plaintiff's unopposed Motion for Leave to File Under Seal describes the materials it wishes to file sealed which contain confidential and proprietary business information of a commercially-sensitive nature.  Because My24 provides sufficient factual and legal basis for sealing, the Motion to Seal is **GRANTED**.

It is further **ORDERED** that Plaintiff's Unopposed Motion for Leave to File Under Seal [Doc. 55] is **GRANTED**, and Plaintiff's Request for Oral Argument on Defendants' Pre-Answer Motion to Dismiss [Doc. 60] is **DENIED**.

The Clerk is **ORDERED** to close the case.

**IT IS SO ORDERED** this 10th day of January, 2019.

MARK H. COHEN
United States District Judge